IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| FRANK TIMOTHY BRUCE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 6:17-CV-3073-SRB |
| v. ) | |
| ) | |
| BRAD COLE, et al., ) | |
| ) | |
| Defendants. ) | |

**ORDER**

Before the Court is Plaintiff Frank Timothy Bruce's Motion for Partial Summary Judgment as to the Issue of Final Authorized Decisionmaker under *Pembaur*. (Doc. # 158). For reasons explained below, the motion is granted.

**I.     Background**

Plaintiff Frank Timothy Bruce is a former deputy sheriff of Christian County, Missouri. In 2015, Defendant Brad Cole ("Cole") ran for Christian County Sheriff. Plaintiff publically endorsed an opponent of Cole. Cole was elected on August 4, 2015. On or about August 7, 2015, Cole assumed the duties of sheriff. Cole terminated Plaintiff's employment that same day. Plaintiff brings this lawsuit against Cole in his official capacity as Sheriff of Christian County and against Christian County itself.[1] (Doc. #112, ¶¶ 2–3). Pursuant to 42 U.S.C. § 1983, Plaintiff alleges that Defendants violated Plaintiff's First Amendment rights. (Doc. #112, ¶¶ 22–32). Plaintiff seeks compensatory damages and attorney's fees. (Doc. #112, ¶ 35). Plaintiff brings the present motion for summary judgment solely to decide whether Cole had the relevant

---

[1] Plaintiff's First Amended Complaint (Doc. #112) also names as defendants Christian County Commissioners Ray Weter, Hosea Bilyeu, and Ralph Phillips. Plaintiff's claims against these commissioners have been dismissed as duplicative, and the commissioners are no longer defendants in this case. (Doc. #152).

final policymaking authority for purposes of municipal liability under § 1983 at the time he dismissed Plaintiff.

## II. Legal Standards

### a. Summary Judgment

A federal court must grant a motion for summary judgment if 1) the moving party "shows that there is no genuine dispute of material fact" and 2) the moving party is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The movant bears the initial responsibility of informing the district court of the basis for its motion and must identify the portions of the record that it believes demonstrate the absence of a genuine dispute of material fact." *Bedford v. Doe*, 880 F.3d 993, 996 (8th Cir. 2018) (citing *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc)). Although this burden belongs to the moving party, the nonmoving party "may not rest upon mere denials or allegations, but must instead set forth specific facts sufficient to raise a genuine issue for trial." *Nationwide Property & Cas. Ins. Co. v. Faircloth*, 845 F.3d 378, 382 (8th Cir. 2016) (quoting *Rohr v. Reliance Bank*, 826 F.3d 1046, 1052 (8th Cir. 2016)). A nonmoving party survives a summary judgment motion if the evidence, viewed in the light most favorable to the nonmoving party, is "such that a reasonable jury could return a verdict for the nonmoving party." *Stuart C. Irby Co. v. Tipton*, 796 F.3d 918, 922 (8th Cir. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

### b. Final Policymaking Authority under § 1983

A municipality is directly liable under § 1983 when an act done pursuant to its official policy or custom violates a person's federal rights. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978). Municipal liability arises if "a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing

final policy with respect to the subject matter in question." *Soltesz v. Rushmore Plaza Civic Ctr.*, 847 F.3d 941, 946 (8th Cir. 2017) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986)). Even "a single decision by a municipal official can constitute official policy" for purposes of municipal liability under § 1983. *Id.* (citing *Bolderson v. City of Wentzville*, 840 F.3d 982, 985 (8th Cir. 2016)). When deciding whether a single decision by a municipal official constitutes the employing municipality's official policy, federal courts determine whether state law grants that official "final policymaking authority in the area in which the challenged conduct occurred." *Thompson v. Shock*, 852 F.3d 786, 793 (8th Cir. 2017) (quoting *Williams v. Butler*, 863 F.2d 1398, 1401 (8th Cir. 1988)).

The policymaking authority that gives rise to municipal liability under § 1983 must be final. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (citing *Pembaur*, 475 U.S. at 481–84) (("[T]he authority to make municipal policy is necessarily the authority to make *final* policy.") (emphasis in original)). Accordingly, "a very fine line exists between delegating final policymaking authority to an official, for which a municipality may be held liable, and entrusting discretionary authority to that official, for which no liability attaches." *Williams*, 863 F.2d at 1402. While "an incomplete delegation of authority" to a municipal official does not result in municipal liability, "an absolute delegation of authority" may impose such liability. *Id.* (holding that municipal judge was "the official policymaker for the hiring and firing of his staff" due to state statute, "long established custom," and the absence of any administrative review process to challenge terminations). The issue of whether an official has final policymaking authority for a given area is "a legal question to be resolved by the trial judge *before* the case is submitted to the jury." *Soltesz*, 847 F.3d at 946 (emphasis in original) (quoting *Jett v. Dall. Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989)).

3

District courts identifying the final policymaker for a given area of a municipality's operations look to two sources: "(1) 'state and local positive law' and (2) state and local 'custom or usage having the force of law.'" *Id.* (quoting *Jett*, 491 U.S. at 737). As to state and local positive law, "state law (which may include valid local ordinances and regulations) will always direct a court to some official or body that has the responsibility for making law or setting policy in any given area of a local government's business." *Praprotnik*, 485 U.S. at 125; *Soltesz*, 847 F.3d at 946. When a § 1983 plaintiff asserting municipal liability has challenged only a single action of a municipal officer, not the customs of the municipality, the Eighth Circuit has looked only at the "policymaking authority granted under positive law." *See Thompson*, 852 F.3d at 793–94.

### III.   Discussion

Defendants Cole and Christian County jointly oppose Plaintiff's motion. Defendants object to many of Plaintiff's statements of "undisputed material fact." (Doc. #163, ¶¶ 2, 4, 6, 8, 10, 13, 14, 15, 17, 18, and 19). None of these objections raises a genuine dispute of any fact material to the issue of final policymaking authority for § 1983 purposes. The material facts are uncontroverted: "Defendants do not controvert that Sheriff Cole was sworn in on August 7, 2015, and that on the same day he terminated Plaintiffs Bruce and Curtis," and "Defendants do not controvert that Cole has the authority to hire and fire his deputies." (Doc. #163, ¶¶ 8, 11). Nor do Defendants make any showing that the decisions of sheriffs to terminate deputies are subject to administrative review. Instead, Defendants rely on mere denials. Therefore, there is no genuine dispute of material fact regarding the issue of whether Defendant Cole possessed the relevant final policymaking authority.

The Court now turns to the sole legal question Plaintiff raises in his motion: whether Defendant Cole had final policymaking authority in the area of dismissing Christian County deputy sheriffs at the time he dismissed Plaintiff. Plaintiff states as uncontroverted fact that Defendant Cole "has **directly acknowledged** that he is the 'final policymaker' within the sheriff's department as to termination of employees." (Doc. #158, ¶ 10). Moreover, Plaintiff argues that Missouri statute and case law and Christian County custom and practice establish that "a sheriff is the final decisionmaker over issues of employment within his office." (Doc. #158, p. 6). Finally, Plaintiff argues that, because Defendant Cole's employment decisions are not subject to "meaningful administrative review," he has been delegated final policymaking authority—not merely discretionary authority—in the area of hiring and firing deputy sheriffs. (Doc. #158, p. 11).

Defendants concede that Defendant Cole, "as Sheriff, has the final authority to hire and fire his deputies" and "if that alone is sufficient to make him a final policymaker, then he may be a final policymaker." (Doc. #163, p. 9). Nonetheless, Defendants argue that Defendant Cole is not a final policymaker "as it relates to employment policy for the County." (Doc. #163, p. 10). Defendants say that the law is less clear than Plaintiff makes it seem, arguing that "some of the case law suggests that more than the authority to simply hire and fire must exist before an official can be a final policymaker." (Doc. #163, p. 9) (citing *Pembaur*, 475 U.S. at 483 n.12). According to Defendants, even though "the Sheriff does have the ability to hire and fire" deputies, the sheriff is still not the final policymaker in the area of deputy employment because the sheriff "does not make *all* employment policy for the County." (Doc. #163, p. 9) (emphasis in original). To illustrate their argument, Defendants point to limits on a sheriff's ability to set a deputy's compensation, a sheriff's inability to modify the manner in which deputies are paid, and

a sheriff's dependence on the County Commission for the benefits available to deputies. (Doc. #163, p. 9).

A municipal official does not need to have final authority to make "*all* employment policy," (Doc. #178, p. 9) (emphasis in original), in order to have final policymaking authority in the area of hiring or firing employees. *See Ware v. Jackson Cty., Mo.*, 150 F.3d 873, 885 (8th Cir. 1998) (("[M]unicipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy *with respect to the action ordered*.") (emphasis added)). *See, e.g.*, *Hess v. Ables*, 714 F.3d 1048, 1054 (8th Cir. 2013) (district court properly dismissed official capacity claims and claims against city because plaintiff failed to allege facts indicating municipal official had final policymaking authority "for the termination of employees"); *Williams*, 863 F.2d at 1403 (state statute authorizing municipal judge to "employ" clerks established municipal judge "as the official policymaker in hiring and firing staff"); *Coffey v. City of Oakdale*, No. 10-4060 (JNE/TNL), 2012 WL 760749, at *8 (Mar. 7, 2012) (city council was "policymaker and final decisionmaker on termination" of employees); *Mauzy v. Mexico Sch. Dist. No. 59*, 878 F. Supp. 153 (E.D. Mo. 1995) (school board had final policymaking authority in area of firing teachers). In this case, Plaintiff alleges that the violation of his constitutional rights was caused by Defendant Cole's act of terminating his employment pursuant to the final policymaking authority delegated to Defendant Cole *in the area of dismissing deputy sheriffs*. If Defendant Cole has final policymaking authority in this particular area, then he is the relevant final policymaker for § 1983 purposes and his decisions pursuant to this authority constitute the official policy of Defendant Christian County.

Here, Missouri statute authorizes "[t]he sheriff of all counties of the first class" to "appoint such deputies . . . as he deems necessary for the proper discharge of the duties of his

office" and states that deputies "shall hold office pursuant to" § 57.275, which expressly grants sheriffs "*final* decision-making authority" with respect to the dismissal of deputy sheriffs. Mo. Rev. Stat. §§ 57.201, 57.275 (emphasis added); *Jenkins v. Tucker*, No. 2:14 CV 38 CDP, 2017 WL 6407876, at *2 (E.D. Mo. Dec. 15, 2017) (citing Mo. Rev. Stat. § 57.275) ("The sheriff has the final decision-making authority to fire deputies."). Confirming the finality of this policymaking authority, the statute provides "no internal avenues of appeal" or administrative review procedures for dismissed deputies to challenge their termination. *See Williams*, 863 F.2d at 1402. The statute provides for a hearing upon the dismissed deputy's request, but the sheriff alone reviews the findings of such a hearing and "has final decision-making authority" as to the dismissal. Mo. Rev. State § 57.275.1. Therefore, Defendant Cole had final policymaking authority in the area of dismissing deputy sheriffs at the time he dismissed Plaintiff.

Defendants further argue that Plaintiff "ha[s] not identified a policy or custom that resulted in a constitutional deprivation." (Doc. #163, p. 10). This issue has no bearing on the present motion. Plaintiff's motion is one for summary judgment on the issue of whether Defendant Cole had final policymaking authority in the area of dismissing deputy sheriffs when he dismissed Plaintiff, not whether Plaintiff has stated a claim upon which relief can be granted. Finally, Defendants assert that, even if this Court identifies Defendant Cole as the relevant final policymaker, this determination "will have no practical effect on Plaintiff's ability to collect any judgment." (Doc. #163, p. 7). This argument also has no relevance to the present motion because it does not raise a genuine dispute of material fact, nor does it provide a reason why Defendant Cole does not, as a matter of law, possess final policymaking authority in the area of deputy sheriff dismissals. Plaintiff has satisfied the requirements of Rule 56 with regard to the

issue of final policymaking authority.  That Rule therefore requires this Court to grant Plaintiff's motion.

IV. **Conclusion**

Accordingly, Plaintiff's Motion for Partial Summary Judgment as to the Issue of Final Authorized Decisionmaker under *Pembaur* (Doc. # 158) is granted.

**IT IS SO ORDERED.**

/s/ Stephen R. Bough
STEPHEN R. BOUGH
UNITED STATES DISTRICT JUDGE

Dated: October 29, 2018