# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | |
|---|---|
| FRANK TIMOTHY BRUCE, | ) |
| Plaintiff, | ) ) ) |
| | ) Case No. 6:17-CV-3073-SRB |
| v. | ) ) |
| BRAD COLE, et al., | ) ) |
| Defendants. | ) |

## ORDER

Before the Court is Defendants' Motion for Summary Judgment. (Doc. #168). For reasons explained below, the motion is denied.

### I. Background

Plaintiff Frank Timothy Bruce is a former deputy sheriff of Christian County, Missouri. In 2015, Defendant Brad Cole ("Cole") ran as a candidate for Christian County Sheriff. Plaintiff publically endorsed Keith Mills, an electoral opponent of Cole. Cole was elected on August 4, 2015. On or about August 7, 2015, Cole assumed the duties of sheriff and terminated Plaintiff's employment. Plaintiff brought this lawsuit under 42 U.S.C. § 1983, alleging that Defendant Cole and Defendant Christian County (collectively "Defendants")[1] violated Plaintiff's First Amendment rights. (Doc. #112, ¶¶ 15–35). Defendants bring the present motion, arguing two independent bases for summary judgment: 1) that Plaintiff's political affiliation did not cause his dismissal and 2) that Defendant Cole is entitled to qualified immunity regarding his decision to

---

[1] Plaintiff's First Amended Complaint (Doc. #112) also names Christian County Commissioners Ray Weter, Hosea Bilyeu, and Ralph Phillips as defendants. Plaintiff's official-capacity claims against these commissioners have been dismissed as duplicative, and the commissioners are no longer defendants in this case. (Doc. #152).

dismiss Plaintiff. Defendants further argue that Defendant Christian County cannot be liable if the Court grants summary judgment on either basis.

## II. Legal Standards

### A. Summary Judgment

A federal court must grant a motion for summary judgment if 1) the moving party "shows that there is no genuine dispute of material fact" and 2) the moving party is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The movant bears the initial responsibility of informing the district court of the basis for its motion and must identify the portions of the record that it believes demonstrate the absence of a genuine dispute of material fact." *Bedford v. Doe*, 880 F.3d 993, 996 (8th Cir. 2018) (citing *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc)). Although this burden belongs to the moving party, the nonmoving party "may not rest upon mere denials or allegations, but must instead set forth specific facts sufficient to raise a genuine issue for trial." *Nationwide Property & Cas. Ins. Co. v. Faircloth*, 845 F.3d 378, 382 (8th Cir. 2016) (quoting *Rohr v. Reliance Bank*, 826 F.3d 1046, 1052 (8th Cir. 2016)). A nonmoving party survives a summary judgment motion if the evidence, viewed in the light most favorable to the nonmoving party, is "such that a reasonable jury could return a verdict for the nonmoving party." *Stuart C. Irby Co. v. Tipton*, 796 F.3d 918, 922 (8th Cir. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The purpose of summary judgment "is not to cut litigants off from their right of trial by jury if they really have issues to try." *Hughes v. Am. Jawa, Ltd.*, 529 F.2d 21, 23 (8th Cir. 1976) (internal quotation marks omitted) (quoting *Poller v. Columbia Broadcasting Sys., Inc.*, 368 U.S. 464, 467 (1962)); *see also Melvin v. Car-Freshener Corp.*, 453 F.3d 1000, 1004 (8th Cir. 2006) (Lay, J., dissenting) (quoting *Poller*, 368 U.S. at 467).

### B. *Elrod-Branti* Claims

In general, the government "may not condition public employment on an employee's exercise of his or her First Amendment rights." *Thompson v. Shock*, 852 F.3d 786, 791 (8th Cir. 2017) (quoting *O'Hare Truck Serv., Inc. v. City of Northlake*, 518 U.S. 712, 717 (1996)). "With few exceptions, the Constitution prohibits" patronage dismissals, which occur when a government employer discharges or demotes an employee "because the employee supports a particular political candidate." *Heffernan v. City of Paterson*, 136 S. Ct. 1412, 1418 (2016). Recognizing the need "to balance the First Amendment rights of government employees with the need of government employers to operate efficiently," the Supreme Court has developed an exception to the general rule. *Thompson*, 852 F.3d at 791 (citing *Elrod v. Burns*, 427 U.S. 347 (1976); *Branti v. Finkel*, 445 U.S. 507 (1980); *DePriest v. Milligan*, 823 F.3d 1179, 1184 (8th Cir. 2016)). Under *Elrod-Branti*, a patronage dismissal violates the First Amendment "unless political affiliation is a reasonably appropriate requirement for the job in question." *O'Hare*, 518 U.S. at 714 (citing *Elrod*, 427 U.S. 347; *Branti*, 445 U.S. 507).

Federal courts apply the *Elrod-Branti* "narrow-justification test" when the adverse employment decision is, as in this case, allegedly due to the employee's "affiliation with the 'wrong' candidate."[2] *Thompson*, 852 F.3d at 793 (citing *Rutan v. Republican Party of Ill.*, 497

---

[2] A related exception, the *Pickering-Connick* balancing test, addresses cases involving "a government employee causing workplace disruption by speaking as a citizen on a matter of public concern, followed by government action adversely affecting the employee's job." *Thompson*, 852 F.3d at 791 (citing *Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968); *Connick v. Myers*, 461 U.S. 138 (1983)). The Eighth Circuit recently clarified when either test applies, holding that 1)"if an employee is discharged because of his or her expressive conduct, we apply the *Pickering-Connick* test"; 2) [i]f an employee is discharged because of his or her political affiliation, we apply the *Elrod-Branti* test"; and 3) "when a political-affiliation employee gets discharged for his or her expressive conduct, we apply *Pickering-Connick*." *Thompson*, 852 F.3d at 792 (internal citations omitted). This third scenario is one in which "speech is intermixed with a *political affiliation requirement*." *Id.* (emphasis added) (internal quotation marks omitted) (quoting *Hinshaw v. Smith*, 436 F.3d 997, 1006 (8th Cir. 2006)) (explaining that the *Hinshaw* court applied *Pickering-Connick* to the executive director of a state agency—a position for which political affiliation was required—who alleged she was dismissed after criticizing policies promulgated by the agency's board of trustees in violation of her First Amendment rights). The parties discuss both tests. Defendants argue that *Pickering-Connick* applies. (Doc. #169, p. 51; Doc. #179, pp. 83–85). Plaintiff argues that *Elrod-Branti*, applies. (Doc. # 174, pp.

U.S. 62, 69 (1990)). This test permits government employers to "take adverse employment actions against employees for protected First Amendment activities if they hold confidential or policymaking positions *for which political loyalty is necessary to an effective job performance.*" *Shockency v. Ramsey Cty.*, 493 F.3d 941, 950 (8th Cir. 2007) (emphasis added). However, "the ultimate inquiry is not whether the label 'policymaker' or 'confidential' fits a particular position; rather the question is whether *the hiring authority can demonstrate* that party affiliation is an appropriate requirement for the effective performance of the public office involved." *O'Hare*, 518 U.S. at 719 (quoting *Branti*, 445 U.S. at 518) (emphasis added).

The *Elrod-Branti* test "is a functional one, focusing on the actual duties an employee performs" and "requir[ing] that a distinction be drawn between political loyalty and other kinds." *Horton v. Taylor*, 767 F.2d 471, 476–77 (8th Cir. 1985). The *Branti* Court itself refused to "accept the proposition that there [could not] be 'mutual confidence and trust' between" the employer and employee at issue in that case "unless they [were] both of the same political party." *Id.* at 477 (quoting *Branti*, 445 U.S. at 520 n.14) (noting that "[t]here is, obviously, a point at which [political loyalty and other types of loyalty] mingle or are merged—a point at which . . . party affiliation bears on [an employee's] job performance"). "*Branti*, however, makes clear that the loyalty required for raw political patronage . . . alone will not justify a patronage dismissal." *Id.* (internal citation and quotations omitted).

### III. Discussion

#### A. Causation

"Like many circuits," the Eighth Circuit has "extended the *Elrod-Branti* principle to include cases in which political affiliation was *a* motivating factor in the dismissal, rather than

---

100–104). This Court agrees with Plaintiff because the present case most squarely fits the second *Thompson* scenario. *See* 852 F.3d at 792.

4

the sole factor." *Langley v. Hot Spring Cty.*, 393 F.3d 814, 817 (8th Cir. 2005) (emphasis in original) (citing *Barnes v. Bosley*, 745 F.2d 501, 507 (8th Cir. 1984)). Accordingly, when addressing an *Elrod-Branti* claim "at the summary judgment stage," the district court first determines whether the plaintiff has submitted sufficient evidence that political affiliation or loyalty was a motivating factor in the dismissal." *Langley*, 393 F.3d at 817; *see also Wagner v. Jones*, 664 F.3d 259, 270 (8th Cir. 2011) (quoting *Acevedo-Diaz v. Aponte*, 1 F.3d 62, 67 (1st Cir. 1993)) (holding that the plaintiff must "produce[] sufficient evidence from which the fact finder reasonably can infer that the plaintiff's protected conduct was a 'substantial' or 'motivating' factor behind [the plaintiff's] dismissal"). A plaintiff can prove a substantial or motivating factor "through either direct or indirect evidence." *Jones*, 664 F.3d at 271 (citing *Davison v. City of Minneapolis*, 490 F.3d 648, 655 n.5, 657 (8th Cir. 2007)).

Second, "[i]f the plaintiff meets this burden, summary judgment must be denied unless the defendant establishes *either* that the political motive is an appropriate requirement for the job, *or* that the dismissal was made for mixed motives and the plaintiff would have been discharged in any event." *Langley*, 393 F.3d at 817 (emphasis in original) (citing *Horton v. Taylor,* 767 F.2d 471, 481 (8th Cir.1985); *Wagner v. Hawkins,* 634 F.Supp. 751, 757 (W.D. Ark. 1986)). The latter "'mixed motives' alternative" in the second prong of *Langley* "comes from" the Supreme Court's decision in *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977). *Mahn v. Jefferson Cty.*, 891 F.3d 1093, 1096–97 (8th Cir. 2018) (noting inconsistent Eighth Circuit precedent regarding the applicable causation standard in First Amendment adverse employment action cases and holding that *Mt. Healthy* applied to plaintiff's *Elrod-Branti* claim); *see also Jones*, 664 F.3d at 270–71 (holding that *Mt. Healthy* applies to First Amendment adverse employment action claims brought by nonpolicymaking employees).

5

When a court deciding a summary judgment motion considers a defendant-employer's *Mt. Healthy* defense, i.e., whether the plaintiff-employee "would have been discharged in any event," *Langley*, 393 F.3d at 817, the "key inquiry" is whether the defendant-employer "can show—with all reasonable inferences drawn in [the plaintiff's] favor—that" the defendant-employer "had a lawful reason to terminate" the plaintiff-employee, that the defendant-employer "would have used that lawful reason to terminate" the plaintiff-employee even if "political affiliation had not been a factor, and that there is no genuine dispute of material fact on these issues." *Mahn*, 891 F.3d at 1098 (quoting *Reyes-Orta v. Puerto Rico Highway & Transp. Auth.*, 811 F.3d 67, 77 (1st Cir. 2016)) (noting that the Eighth Circuit has adopted the First Circuit's approach to *Mt. Healthy* defenses). To succeed on a motion for summary judgment, a defendant-employer asserting a *Mt. Healthy* defense must "show that the record would compel a reasonable jury to find that the adverse action *would have occurred* anyway, not merely that such action *would have been warranted* anyway." *Mahn*, 891 F.3d at 1098 (emphasis in original) (internal quotations omitted) (quoting *McCue v. Bradstreet*, 807 F.3d 334, 346 (1st Cir. 2015)) (denying summary judgment because defendants provided no "evidence showing [the plaintiff's] performance would have indisputably caused her termination").

Defendants assert that Plaintiff cannot establish sufficient evidence from which a reasonable jury could find that Plantiff's "support for Keith Mills motivated[3] [Defendant Cole's]

---

[3] Defendants argue that Plaintiff "must first demonstrate his support for Keith Mills was *the* motivating factor in his termination." (Doc. #169, p. 37) (emphasis added) (citing *Mahn*, 891 F.3d at 1096). Defendants then conclude that "[t]hus, Plaintiff must establish his support [for Mills] was the 'but-for' cause of his termination." (Doc. #169, p. 37) (citing *Hartman v. Moore*, 547 U.S. 250, 260 (2006)). Defendants misstate the standard that this Court must apply to this summary judgment motion. First, the *Mahn* decision held that a district court resolving an *Elrod-Branti* claim at the summary judgment stage "first determines whether the plaintiff has submitted sufficient evidence that political affiliation or loyalty was *a* motivating factor in the dismissal," not *the* motivating factor, and that under *Mt. Healthy*, "[t]he burden of persuasion itself passes to the defendant-employer once the plaintiff produces sufficient evidence from which the fact finder reasonably can infer that the plaintiff's protected conduct was *a* 'substantial' or 'motivating factor* behind her dismissal." *Mahn*, 891 F.3d at 1096 (emphasis added). Second, *Hartman* is inapplicable here. That decision is an alternative to *Mt. Healthy* that applies to First Amendment

6

decision to terminate [Plaintiff]," arguing that Plaintiff "has no probative evidence demonstrating his support for Mills was the motivating factor in his termination, only speculation." (Doc. #169, pp. 37, 42). Defendants further argue that even if Plaintiff has produced such evidence, Defendants have produced sufficient evidence to show that Defendant Cole would have terminated Plaintiff's employment in any event for constitutionally permissible reasons. (Doc. #169, pp. 42–44). Plaintiff argues that he has produced "sufficient causation evidence to survive summary judgment" and that Defendants have not met their burden of "demonstrat[ing] that a jury would be compelled to conclude that Plaintiff would have been terminated anyway." (Doc. #174, pp. 81, 86–88).

Here, a genuine dispute of material fact exists as to whether Plaintiff's political affiliation with Mills caused his dismissal. First, viewing all evidence and inferences in the light most favorable to the nonmoving party, the Court finds that Plaintiff has produced sufficient evidence from which a reasonable jury could infer that Plaintiff's political affiliation with Mills was a substantial or motivating factor in Defendant Cole's decision to dismiss Plaintiff. Plaintiff has produced evidence that Defendant Cole violated Christian County Sheriff's Department policy when he dismissed Plaintiff (Doc. #174, pp. 82–83; Doc. #174-13; Doc. #174-14); that Plaintiff's job performance had been satisfactory (Doc. #174, p. 83; Doc. #174-38; Doc. #174-39); that there was close temporal proximity between the election and Plaintiff's dismissal (Doc. #174, pp. 83–84); that there is "me too" evidence from other deputies who were fired after they supported

---

retaliatory prosecution claims, which fundamentally differ from *Elrod-Branti* claims because retaliatory prosecution claims allege that animus by one government agent (such as a law enforcement officer) caused retaliatory action by another government agent (a prosecutor). *See Hartman*, 547 U.S. at 259 (explaining that "the need to demonstrate causation in the retaliatory-prosecution context presents an additional difficulty that can be understood by comparing the requisite causation in ordinary retaliation claims, where the government agent allegedly harboring the animus is also the individual allegedly taking the adverse action, with causation in a case like this one" where the required causal connection "is not merely between the retaliatory animus of one person and that person's own injurious action, but between the retaliatory animus of one person and the action of another").

Mills (Doc. #174, p. 80) (citing *Hawkins v. Hennepin Tech Ctr.*, 900 F.2d 153, 155–56 (8th Cir. 1990)); that Plaintiff's workplace environment around the time of the election and at the time Defendant Cole assumed the position of sheriff could indicate political affiliation as a motive for Plaintiff's dismissal (Doc. #174, pp. 85–86; Doc. #169-8; Doc. #174-3; Doc. #174-16; Doc. #174-18; Doc. #174-20); and that Defendants' stated reasons for dismissing Plaintiff could be unfounded or pretextual. (Doc. #174, p. 86; Doc. #174-36).

Taken together, this is evidence from which a jury could reasonably infer that Plaintiff's political affiliation with Mills was a substantial or motivating factor in Plaintiff's dismissal. *See Hudson v. Norris*, 227 F.3d 1047, 1051–52 (8th Cir. 2000) (holding that plaintiff produced sufficient causation evidence to survive summary judgment in part due to evidence "that the reasons that the defendants gave for some of their adverse employment decisions were unfounded," noting that such evidence "does double duty for a plaintiff: [i]t tends to show a causal link between the protected conduct and the adverse action, and it also tends to show that the justification given by a defendant was pretextual"). Defendants challenge this evidence, arguing that it is not probative, that it does not give rise to an inference of pretext, and that a reasonable jury would be compelled to find for Defendants. These challenges further illustrate why there is a genuine dispute of material fact as to causation.

Second, Defendants' *Mt. Healthy* defense does not warrant summary judgment. Defendants have not shown that the record would compel a reasonable jury to find that Defendant Cole would have dismissed Plaintiff regardless of Plaintiff's support for Mills.[4] While Defendants may have provided evidence of lawful grounds to dismiss Plaintiff, i.e., that

---

[4] In the portion of their summary judgment motion addressing causation, Defendants do not argue that "the political motive is an appropriate requirement for the job." *See Mahn*, 891 F.3d 1096 (quoting *Langley*, 393 F.3d at 817). This Court will therefore consider only Defendants' *Mt. Healthy* defense in its causation analysis.

Plaintiff's dismissal "*would have been warranted* anyway," such evidence would not necessarily compel a reasonable jury to find that Plaintiff's dismissal "*would have occurred* anyway." *See Mahn*, 891 F.3d at 1098 (emphasis in original) (defendants not entitled to summary judgment on plaintiff's *Elrod-Branti* claim because, despite defendants' evidence of plaintiff's performance issues, defendants did not show "[plaintiff's] performance would have indisputably caused her termination"). For instance, the Eighth Circuit recently held in an unpublished opinion that a plaintiff—the chief deputy clerk of the Circuit Court of Jefferson County, Missouri—produced sufficient evidence from which a reasonable jury could infer that her political affiliation with the newly elected clerk of court's electoral opponent was a substantial or motivating factor in the clerk of court's decision to dismiss the plaintiff. *McKee v. Reuter*, No. 17-2948, 2019 WL 123589, at *5 (8th Cir. Jan. 8, 2019). The *McKee* court also rejected the defendants' *Mt. Healthy* defense. *Id.* at *7. While not having precedential effect, this opinion helps inform this Court as to the proper path. Here, because there are genuine disputes of material fact for trial regarding whether political affiliation was a substantial or motivating factor behind Plaintiff's dismissal and whether Plaintiff would have been dismissed regardless of his political affiliation, summary judgment is not warranted on causation grounds. *See Mahn*, 891 F.3d at 1098.

### B. Qualified Immunity

Under the doctrine of qualified immunity a government officer sued in his individual capacity is "shielded from liability for civil damages" when performing discretionary functions unless his conduct "violate[s] clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Thompson*, 852 F.3d at 790. Because qualified immunity "is an immunity from suit," the issue "should be resolved 'at the earliest possible stage in litigation' to ensure that insubstantial

9

damage claims against government officials are resolved 'prior to discovery.'" *Johnson v. Moody*, 903 F.3d 766, 773 (2018) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231–32 (2009)).

When determining whether a government official is entitled to qualified immunity, courts apply a two-prong inquiry: "(1) whether the facts alleged demonstrate a violation of the employee's constitutional right and (2) whether that right was clearly established at the time of the employee's firing." *Thompson*, 852 F.3d at 790 (quoting *Anzaldua v. Ne. Ambulance & Fire Prot. Dist.*, 793 F.3d 822, 832 (8th Cir. 2015)). Regarding prong two of the qualified immunity analysis, "[f]or a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Nord v. Walsh Cty.*, 757 F.3d 734, 739 (8th Cir. 2014) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)). To make this showing "it is unnecessary to have 'a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate.'" *Vester v. Hallock*, 864 F.3d 884, 887 (8th Cir. 2017) (quoting *Parker v. Chard*, 777 F.3d 977, 980 (8th Cir. 2015)). District courts have "discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236.

Defendants argue that in August 2015 a reasonable official in Defendant Cole's position would have believed he could dismiss Plaintiff for supporting Mills because under *Elrod-Branti* "a public employer may terminate or demote an employee for supporting an opposing candidate if political affiliation is a reasonable requirement of the employee's position" and "political affiliation/association may be a reasonable requirement when the position requires loyalty." (Doc. #169, pp. 47) (citing *Nord*, 757 F.3d at 744)). Plaintiff argues that, at the time Defendant Cole dismissed Plaintiff, the law clearly established that "Missouri deputy sheriffs are not subject

to patronage dismissals." (Doc. #174, p. 90). Plaintiff argues that political loyalty is not an appropriate job requirement for Missouri deputy sheriffs and suggests that Defendant Cole cannot "simultaneously trumpet the alleged 'fact' that he retained other deputies who did not support him . . . while also implicitly claiming that his deputies' political support of him was necessary to allow those deputies to effectively do their jobs." (Doc. #174, pp. 95–96) (noting that Defendant Cole "makes no real attempt to meet his burden to show that party affiliation is a requirement for the effective performance of the investigative duties Plaintiff performed").

Here, Plaintiff has shown that his First Amendment protection against a patronage dismissal was clearly established at the time Defendant Cole dismissed him. Defendants have not shown that political loyalty was "necessary to" a Christian County deputy sheriff's "effective job performance." *Shockency*, 493 F.3d at 950. The uncontroverted facts regarding Plaintiff's job duties are that Plaintiff was a "detective" at the time he was terminated. (Doc. #174, p. 11). As such, Plaintiff "frequently interacted with victims, suspects and witnesses within the county," "was responsible for investigating and solving" crimes, "had the discretion to process crime scenes" and "perform other duties," and had the discretion to "make other decisions incident to those responsibilities." (Doc. #174, pp. 11–12). At the time Defendant Cole dismissed Plaintiff, the Eighth Circuit's only decision addressing a Missouri sheriff's qualified immunity defense against a deputy's *Elrod-Branti* claim held that the deputy's right not to be dismissed for his political affiliation was clearly established at the time the sheriff dismissed him. *See Shockency*, 493 F.3d at 951. The *Elrod* decision itself held that a deputy sheriff stated a claim that his First Amendment rights were violated when he was dismissed for political affiliation. 427 U.S. at 373. Moreover, at the time Defendant Cole dismissed Plaintiff, Missouri statute expressly

11

forbade counties from "prohibiting any first responder," including deputy sheriffs,[5] "from engaging in any political activity while off duty and not in uniform." Mo. Rev. Stat. § 67.145 (2013). At the time Defendant Cole dismissed Plaintiff, the law clearly established that dismissing someone in Plaintiff's position for political affiliation reasons would violate that person's First Amendment rights such that a reasonable officer in Defendant Cole's position would understand that dismissing Plaintiff for those reasons would violate those rights.

Defendants' reasoning is not persuasive. First, Defendants conflate political affiliation with loyalty in general. *See Horton*, 767 F.2d at 476 ("As to loyalty, *Branti* requires that a distinction be drawn between political loyalty and other kinds."). Defendants have not shown that political loyalty in particular, as opposed to the general loyalty typically expected of an employee towards the employer, is necessary for the effective performance of a deputy sheriff working as a detective. Second, Defendants downplay the rule that, while "[g]overnment officials may indeed terminate at-will relationships unmodified by any legal constraints, without cause[,] . . . it does not follow that this discretion can be exercised to impose conditions on expressing, or not expressing, specific political views. *O'Hare*, 518 U.S. at 725–26 (citing *Perry v. Sindermann*, 408 U.S. 593, 597 (1972)). The fact that an employment relationship is "at-will" does not itself authorize demotions or firings that would otherwise violate the First Amendment. Moreover, while Defendants argue at length about why Mo. Rev. Stat. § 67.145 does not apply to Defendant Cole's conduct, Defendants do not discuss the core issue under *Elrod-Branti* that is their burden to demonstrate: why political loyalty is an appropriate requirement for the effective performance of a deputy sheriff in Christian County, Missouri.

---

[5] As of August 2015, Missouri statute stated that "No political subdivision of this state shall prohibit any first responder . . . from engaging in any political activity while off duty and not in uniform . . . ," where "first responder" was defined as "any person trained and authorized by law to render emergency medical assistance or treatment" such as "deputy sheriffs." Mo. Rev. Stat. §§ 67.145, 192.800 (2013).

Defendants' reliance on *Nord* does not change the outcome. The *Nord* court applied the *Pickering-Connick* balancing test and ruled that a county sheriff in North Dakota was entitled to qualified immunity from a deputy sheriff's First Amendment retaliation claim. 757 F.3d at 743. The plaintiff in that case ran against the incumbent sheriff, lost the election, and was fired by the re-elected sheriff the next day. *Id.* at 737–38. Here, *Nord* does not control because that court applied only the *Pickering-Connick* test, 757 F.3d at 740, 744, which does not apply in this case. Moreover, the *Nord* court's discussion of the Fourth Circuit's *Jenkins* case, which Defendants' argue this Court should follow, does not change the analysis because that decision is not binding on this Court and is based on the law of states other than Missouri. *See Shockency*, 493 F.3d at 950–51. *Shockency*, on which Plaintiff relies, is on point here because the court in that case, in which the plaintiff was a deputy sheriff, applied *Elrod-Branti* to reach its decision. In *Shockency*, the court found that political loyalty was not an appropriate requirement for the effective performance of Minnesota deputy sheriffs. 493 F.3d at 951. Defendants seek to distinguish *Shockency* from the present case, but the distinctions Defendants identify between the Minnesota deputy sheriffs in *Shockency* and Missouri deputy sheriffs do not change the outcome in this case. None of these distinctions have to do with the "actual duties" a Missouri deputy sheriff performs compared to the duties of a Minnesota deputy sheriff. *See Horton*, 767 F.2d at 477.

The core question is whether the employer can show that political affiliation "is an appropriate requirement for the effective performance of the public office involved." *O'Hare*, 518 U.S. at 719 (quoting *Branti*, 445 U.S. at 518). Defendants have not made such a showing. The two dismissed deputy sheriffs in *Shockency* performed many important duties. One of the deputies "was promoted twice," "attain[ed] the rank of lieutenant," "supervised 80 employees,"

"held the highest job available for his rank," "supervised several units, communicated department policy to the public, developed enforcement strategies for community policing, assisted with budget preparation, and composed strategy for long range improvements of the uniformed patrol division." *Shockency*, 493 F.3d at 945. The other deputy "was put in charge of the [patrol division] midnight shift," was "the senior officer on duty," "communicated with the afternoon and morning shifts to resolve all outstanding issues, reviewed all calls and reports, helped officers prepare for the night shift, processed outgoing mail, worked with dispatch on paperwork," "monitored deputies in the street by radio," was "responsible for coordinating all first responders in times of emergency," "coordinat[ed] with surrounding departments," "decid[ed] when it was necessary to contact supervisors," and "developed and implemented the field training officer program, a 'substantial responsibility.'" *Id.* at 946. Despite these duties, the *Shockency* court held that "a reasonable official would not have thought that [these deputies] held policymaking positions" for which "political loyalty is necessary to an effective job performance" and "could not have reasonably relied on [*Elrod-Branti*] in taking adverse employment actions against them." *Id.* at 950–51. In sum, at the time Defendant Cole dismissed Plaintiff it was beyond debate—and thus clearly established—that patronage dismissals violate the First Amendment, *Elrod*, 427 U.S. at 373, and that Plaintiff does not meet the exception that applies when "party affiliation is necessary to do [the job at issue] effectively." *Shockency*, 493 F.3d at 950; *Horton*, 767 F.2d at 472. Accordingly, Defendant Cole is not entitled to qualified immunity regarding his decision to dismiss Plaintiff.

Finally, because neither causation nor qualified immunity provides a basis for this Court to grant summary judgment, the Court will not address whether Defendant Christian County would have still faced liability had the Court granted summary judgment on either ground.

14

## IV. Conclusion

Accordingly, Defendants' Motion for Summary Judgment (Doc. #168) is denied.

**IT IS SO ORDERED.**

/s/ Stephen R. Bough
STEPHEN R. BOUGH
UNITED STATES DISTRICT JUDGE

Dated: January 17, 2019